## THE VANDERCOOK.

### McCAFFREY v. THE VANDERCOOK.

(District Court, S. D. New York. January 16, 1897.)

UNITED STATES MARSHAL—FEES—EXPENSE FOR KEEPER.

The expenses of an outside keeper employed by the marshal to take care of the property attached are not "fees and emoluments" to be collected and accounted for, or covered into the treasury under the act of 1896 (chapter 252, § 6), nor can any security therefor be required by the department of justice.

This was a libel in rem by Mary J. McCaffrey against the steam tug Vandercook to recover damages for a collision. The hearing was of an application of the marshal for an order to compel the libelant to make a deposit or give bond to cover fees and expenses of keeping.

Cameron & Hill, for libelant.

Wallace Macfarlane, U. S. Atty., for the marshal.

BROWN, District Judge. On December 17, 1896, the tug Vandercook was arrested at Whitestone, Long Island, by the marshal, under process upon a libel for causing damages by collision. A keeper was placed in charge, and the owners having declined to give any bond to relieve the tug from arrest, the marshal now asks that the libelant be compelled to deposit $100 to cover the fees and expenses of keeping, or give a bond to the United States in the sum of $200 to cover such charges, in accordance with the general instructions to marshals issued July 1, 1896, and in the circular letters from the attorney general's office, dated August 1, October 28, and December 7, 1896. The libelant at the same time moves that the tug be sold as perishable property, being worth a comparatively small amount, which is likely to be seriously diminished by the expenses of keeping, unless sold before the adjudication of the cause.

The charges here involved, except an insignificant sum for the arrest of the vessel, are for keeper's fees. As such they are expenses incurred by the marshal in caring for the property attached. They are within section 829 of the Revised Statutes as "necessary expenses of keeping boats, vessels, or other property attached or libeled in admiralty," which it is declared "shall not exceed $2.50 a day." Under the practice in this district, the keeper is not the marshal, nor a deputy marshal, but always an outside person employed to take care of the property. In this case it was the constable at Whitestone. The marshal is not allowed to make any profit on this employment, but can tax only the amount necessarily paid to the keeper, not exceeding $2.50 per·day.

By section 6, c. 252, p. 179, Laws 1895–96, it is provided:

"That all fees and emoluments authorized by law to be paid * * * United States marshals shall be charged as heretofore, and shall be collected as far as possible and paid to the clerk of the court having jurisdiction, and by him covered into the treasury; and said officers shall be paid for their official services, salaries and compensation hereinafter provided, and not otherwise."

The circular letter of October 28, 1896, directs a marshal "who necessarily incurs any of the expenses mentioned or provided for in section 829 to charge the same in his quarterly account under the appropriation for salaries, fees and expenses, and collect the same together with the fees earned in the case, and deposit the same with the clerk," as provided in the above act, and to "account therefor on form 72."

The "expenses" paid for an outside keeper employed by the marshal are not "fees and emoluments" of the marshal within section 6 of the act above quoted. When performed by the marshal or by any deputy attached to his office for whom salaries are provided under sections 9 and 10 of the above act (pages 181, 182), they would be, no doubt, marshal's fees, and subject to the provisions of the act of 1896, and to the accounting thereby required. But the expenses of outside keepers hired for the occasion are no more "fees and emoluments" than a printer's bill for advertising process under the marshal's direction. It is the same with many other items of expense necessarily incurred by the marshal in performing the orders of the court in suits between private litigants. For the reimbursement of such outside expenses the marshal must look to the parties to the cause, or to their proctors, or to the proceeds of the property. The United States has no interest in such expenses, and no concern with them. The act of 1896 makes no reference to them. The evident design of the act is nothing more than to provide compensation to the marshal and his deputies by salaries payable by the government, and that the government shall receive the "fees and emoluments authorized by law to be paid to marshals"; the government thus taking what was before collectible by the marshal, or his deputy as compensation for their official services. The expenses here referred to, when collected, are of no benefit to the marshal, and are no part of his "fees and emoluments," and hence are wholly outside of the act.

If it was the intent of the act that such expenses should be collected for the benefit of the United States, and covered into the treasury, the United States would be bound to pay the keepers, printers, etc. who had earned the money. To collect and pay such outside expenses of private litigation would be of no possible benefit to the United States, but an enormous burden. These expenses are often considerable in private litigation. It is inconceivable that congress could have intended that the United States should assume the burden of all such expenses in private litigation, or to delay the payment of all nonofficial employés, however necessary, until accounts could be passed through the treasury department and appropriations by congress made therefor. By existing laws, any new employment of persons in advance of appropriations is prohibited; so that the moment previous appropriations were exhausted, as happens yearly, no new employment in printing or for keepers in subsequent cases could lawfully be made. Nothing but the profoundest dissatisfaction in the community, and the greatest embarrassments in the ordinary business of the court could be the result. There is nothing in the act of 1896 to warrant any such prac-

tice; and it is not to be implied (U. S. v. Cigars, 26 Int. Rev. Rec. 230); while previous provisions of the Revised Statutes, and other provisions in this act show how careful congress has been to provide that obligations should not be assumed by the United States beyond those specified; and that no department should have authority to bind the United States beyond the appropriations made for the specified purposes. Rev. St. §§ 3678, 3679.

The following provision from the appropriation act of June 11, 1896, c. 420, is referred to as authorizing an account and payment of such expenses by the United States; "for payment of salaries, fees and expenses of the United States marshals and their deputies $1,000,000, to include payment for services rendered in behalf of the United States, or otherwise." Page 450.

The "expenses" here referred to are the expenses which in numerous sections of the appropriation act, and in the general statutes of the United States the marshals are authorized or required to incur. The expenses of nonofficial keepers, printers, etc., specially employed in private litigation are not of this class. Such services, moreover, are not "services rendered by the marshal," or his deputies, in the sense there referred to, but by outside employés for the occasion only.

The fact that appropriations must be previously made to authorize the payment of "marshal's salaries, or their expenses," shows that the services and expenses there referred to are those which are capable of approximate estimate, upon which previous appropriations by congress may be based. But the expenses incident to private litigation are utterly incapable of any approximate estimate; so that if such expenses are to be paid by the United States, either a large and indefinite margin of surplus appropriation over ordinary expenses must be provided for by congress beforehand, or else the business of the courts and all proper care of property in litigation must cease until an appropriation could be obtained from congress to pay for such outside expenses. Section 3679.

In my judgment the United States has nothing to do with outside expenses of this character. It is under no obligation to pay them; no department or officer is authorized to bind the government for them; and no account in regard to such expenses can be required under the act of May 28, 1896.

As respects any express provision in favor of the United States in bonds or stipulations for costs now in use, I think it undesirable that any change in the present practice in this district should be made. The "fees and emoluments" which will now accrue to the United States through the marshal are, in the main, secured by the transactions themselves, and by the funds derivable from them which come under the direction of the court; for the residue, which is comparatively small, the present practice, which holds the proctors personally responsible, affords a more speedy, and on the whole, a more certain remedy than an express provision for the payment of marshal's fees in the stipulation for costs, since such a stipulation would be taken as relieving the proctors from their personal responsibility. For the present, therefore, I think it in the interest

of the United States that no change should be made in the form of the existing stipulation. It will be changed hereafter if found desirable.

The instructions to the marshal in the circular letters above referred to, and the consequent demands made upon proctors for deposits of money, or for additional bonds, has already worked injuriously in the greatly increased proportion of suits in which exemption from costs is secured under the act of July 20, 1892, providing for relief on filing an affidavit of inability (2 Supp. Rev. St. c. 209, p. 41). This act provides that "such applicant shall not be required to prepay fees or costs, or give security therefor; that the officers of court shall serve all process and perform all duties * * * as in other cases;" and finally, that "the United States shall not be liable for any of the costs thus incurred." If, in that class of cases such expenses as above referred to could now be charged against the United States, this express provision would be nullified. Under the previous practice the marshal did not incur any of these outside expenses, except at the charge of the parties, though he rendered all official services gratuitously.

For the above reasons I must decline the application of the marshal to order further security to be given or deposit made; and the circumstances being sufficient to warrant an order to sell the tug, an order to that effect may be entered.